SCHWENKER, Commissioner of Banking, Respondent, vs.
REEDAL and others, Appellants.

*April 8—October 13, 1931.*

From the judgment entered, the defendants G. B. Reedal, P. E. Reedal, Carl G. Beyer, and C. T. Bader appeal.

For the appellants there were briefs by *Goggins, Brazeau & Graves* of Wisconsin Rapids, attorneys for G. B. Reedal, P. E. Reedal, and C. T. Bader, and by *Carpenter & Jenkins* of Stevens Point and *Bundy, Beach & Holland* of Eau Claire, attorneys for Carl G. Beyer (*W. K. Parkinson* of Phillips of counsel), and oral argument by *Mr. Theo W. Brazeau, Mr. Parkinson,* and *Mr. L. N. Jenkins.*

For the respondent there were briefs by *O'Melia & Kaye* of Rhinelander, and oral argument by *A. J. O'Melia.*

The following opinion was filed May 12, 1931:

ROSENBERRY, C. J. This action was begun upon a declaration filed pursuant to the provisions of sec. 221.50, Stats. That section, together with secs. 221.51 and 221.52, are for convenience printed in the margin.[1]

---

[1] 221.50 The stockholders of any bank organized under the provisions of this chapter may file with the commissioner of banking a declaration in writing, signed by each and all of them and by them acknowledged, consenting and agreeing to hold themselves individually responsible for all the debts, demands and liabilities of said bank. Upon application therefor the commissioner of banking shall make and certify a copy of said declaration which shall be received in evidence and have the same effect as the original declaration would have if produced in evidence and duly proved.

221.51 On and from the filing of such declaration the persons who have executed the same shall be individually liable for all the debts, demands and liabilities of said bank, as well those then existing and unpaid as those thereafter to be made, created or incurred. And in any action brought against any such bank for any debt, demand or liability thereof it shall be competent for the party plaintiff to join as defendant therewith any one, or more, or all of the stockholders, whose names are attached to such declaration, and in such action to recover and have judgment and execution against the defendants or either or any of them; provided, that nothing herein shall be construed to prevent any action from being maintained for any debt, demand or liability of such bank against said bank alone, or against the said stockholders, or either or any of them. In case of the *bona fide* sale and transfer of any stock or interest of any stockholder, in any such bank, as provided in section 221.43, a

In 1905 the defendants G. B. Reedal, W. K. Parkinson, and P. R. Minahan purchased stock of one Rosholt in the Bank of Prentice. The other defendant stockholders subsequently became interested in the bank. For some considerable time prior to May 12, 1920, the bank examiner had been dissatisfied with the financial condition of the bank, due mainly to the embezzlement of $40,000 by its cashier. The commissioner of banking suggested that a declaration be filed pursuant to the provisions of sec. 221.50, which would protect the depositors. The original or first declaration was as follows:

"Know all men by these presents, that G. B. Reedal, C. T. Bader, P. E. Reedal, W. K. Parkinson, being all the stockholders of the Bank of Prentice, a banking corporation organized and existing under the laws of the state of Wisconsin and having its place of business at the village of Prentice, in the state of Wisconsin, in conformity to section 2024—51 (now 221.50) of the Statutes, do hereby consent to become and agree to be individually responsible for all the debts, demands, and liabilities of said bank.

"In witness whereof the said stockholders have hereunto set their hands the 12th day of May, A. D. 1920.

"G. B. REEDAL.
"P. E. REEDAL.
"C. T. BADER.

(Witnessed and acknowledged.)  "W. K. PARKINSON."

written memorandum of such transfer, signed and acknowledged in manner aforesaid by the vendor of said stock or interest, may be filed with the commissioner of banking, and thereupon the individual liability of such vendor for the debts, demands and liabilities of said bank, which may be created or incurred after the expiration of six months from and after the filing of said memorandum shall cease; and in such case the purchaser of said stock shall not become or be responsible or liable in any manner for the debts, demands and liabilities of such bank unless he shall execute and file the declaration mentioned in the next preceding section.

221.52 The commissioner of banking, his deputy or any examiner by him appointed shall not be required to take into consideration such certificate of unlimited individual responsibility in determining the impairment of capital of any bank, or in determining the solvency of any such bank.

This was transmitted to the commissioner of banking by letter, whereupon the commissioner of banking submitted the matter to the attorney general. In the letter of submission the commissioner said:

"The inclosed document was executed and delivered to me. This is not signed by all of the stockholders. There are three, I believe, who have not signed. These three do not reside at Prentice. I will appreciate your examining this guarantee and advising me if in your opinion it is in proper form and will accomplish the purpose for which it was given."

In response to the communication of the commissioner of banking, the attorney general rendered an opinion in which it was held that the declaration must be signed in accordance with the statute and by all of the stockholders. Thereupon a blank was returned to the Bank of Prentice and an attempt was made to get a declaration in compliance with the statute as interpreted by the attorney general. The second declaration was as follows:

"Know all men by these presents, that G. B. Reedal, C. T. Bader, P. E. Reedal, W. K. Parkinson, F. E. Morner, P. R. Minahan, C. G. Beyer, being all the stockholders of the Bank of Prentice, a banking corporation organized and existing under the laws of the state of Wisconsin and having its place of business at the village of Prentice in the state of Wisconsin, in conformity to section 2024—51 [now 221.50] of the Statutes do hereby consent to become and agree to be individually responsible for all the debts, demands, and liabilities of said bank.

"In witness whereof the said stockholders have hereunto set their hands the 24 day of June, A. D. 1920.

"G. B. REEDAL.
"W. K. PARKINSON.
"CARL G. BEYER.
"P. E. REEDAL.
"C. T. BADER.
(Witnessed and acknowledged.) "F. E. MORNER."

The declaration of June 24, 1920, was transmitted to the commissioner of banking in a letter signed by G. B. Reedal, in which he stated:

"P. R. Minahan of Fond du Lac is the owner of fifteen shares as shown on the books of the bank, while as a matter of fact these shares were sent me by him eight or ten years ago to apply on his indebtedness to me, and I have had the stock since that time, although he had not indorsed it. Mr. Minahan considered, I think, at that time that he had disposed of it, but I did not have it signed over and transferred as we had made no agreement as to its value at that time so as to credit him with the proper amount.

"I have just learned that Mr. Minahan has been away some time I believe in New Mexico but is expected back at any time so have been unable to get in touch with him. As soon as I can reach him I propose to have him sign over the transfer to me which should have been done years ago and the transfer the stock on the books at Prentice and hope this arrangement will be satisfactory to you."

The commissioner of banking replied that the fact that Mr. Minahan had delivered the stock to Mr. Reedal did not change his liability and that in the opinion of the commissioner of banking he should be required to sign the guaranty, and said:

"It is required you either secure a guaranty from Mr. Minahan or at once secure the legal transfer of his stock. It would seem you have permitted the affairs of the Bank of Prentice to run along in a very slipshod manner.

"Should you arrange to have the Minahan stock transferred it will probably be necessary to again have the guaranty executed."

Here the transaction seems to have ended. The declaration of June 24, 1920, was never marked "Filed" by the commissioner of banking but it remained in his office. The bank subsequently became insolvent and its assets were taken in charge by the commissioner of banking, who sued

to enforce the liability of the signers of the declaration of June 24, 1920.

I. The first question presented is, In order to make an enforceable declaration, does sec. 221.50 of the Statutes require the signature of all of the stockholders to the declaration? The answer to this question involves the interpretation of sec. 221.50. Sec. 221.50 was a part of the general revision of the banking laws of the state, known as ch. 234 of the Laws of 1903. For many years prior to that time a movement had been on foot looking to a comprehensive revision of the banking laws of the state. By amendment of the constitution approved at the November, 1902, election, the power of the legislature had been materially enlarged with reference to the enactment of a general banking law for the creation of banks and for the regulation and supervision of the banking business (sec. 4, art. XI, Const.). In the ninth annual report of the commissioner of banking (1903) the commissioner called attention (p. 14) to the passage of ch. 234 of the Laws of 1903. Governor Robert M. La Follette in his message to the legislature (1903 Senate Journal, p. 92) had urged the necessity of a revision of the banking laws of the state in the exercise of the power conferred by the recent amendment to the constitution. Various organizations of bankers had adopted resolutions calling attention to the necessity of a revision of the banking laws. Ch. 234 of the Laws of 1903 was a very comprehensive and sweeping revision of the banking law. It appears from the report of the commissioner of banking for 1901 that the resources of the private banks of the state of Wisconsin as of the close of business December 10, 1901, were $13,283,849.53. By the act all persons were forbidden to make use of the words "bank," "savings bank," or "banker" unless they were by the terms of the law subject to supervision by the commissioner of banking. (Sec. 221.49, Stats.)

We have stated so much of the history of sec. 221.50 to 221.52 as is valuable in order to discover if possible the

situation with which the legislature was attempting to deal. It is quite apparent that it was the intent and purpose of these sections to provide a method whereby many of the private bankers who were opposed to the enactment of the law might continue their individual liability to their depositors. Many bankers of the old school felt that a man ought not to conduct a bank who was not willing to put behind it his entire assets. The provisions of the act which imposed a double liability upon the stockholders was in their opinion insufficient and unworthy of a real banker. By means of this provision they could organize under the act subject to the supervision of the commissioner of banking and at the same time assure their stockholders to the extent of their assets. It is quite evident also from the letter of the commissioner of banking that it had come to be recognized as a method whereby a weak bank might be strengthened without alarming the community as an assessment would do. Whatever the purpose, it is evident that it was the intent to permit the bank to be thereby financially strengthened. The language of the section is:

"The stockholders of any bank organized under the provisions of this chapter may file with the commissioner of banking a declaration in writing signed by each and all of them."

It is the contention of the defendants that by the use of the words "by each and all" it was intended that the declaration should have no validity under the statute unless every stockholder signed it. If the declaration was to serve any practical purpose, such a construction of the statute would make it of little value. It is a matter of common knowledge that in most banks, especially the larger ones, which have been doing business for any length of time, there are among its stockholders persons incapable of entering into a contractual liability of such nature as that prescribed by this section. At the time the law was enacted married women could not become guarantors, minors could not be a party to the contract, executors and administrators would prob-

ably. have had no authority to bind the persons whom they represented, insane and other incompetents would be incapable of acting for themselves or through their guardians. In addition to that, every other feature of the statute indicates a contrary intention. "The stockholders" applies as well to a part of the stockholders as to all of the stockholders. When the stockholders who desire to make themselves individually responsible attempt to do so, they must each and all sign the declaration.

Sec. 221.51, which provides for the enforcement of the obligation, provides:

"On and from the filing of such declaration the persons who have executed the same shall be individually liable for all the debts, demands and liabilities of said bank."

If the construction contended for by the appellants were given to it, this should read, "The stockholders shall be individually liable." There would be no necessity for saying "The persons who have executed the same." It is urged that this language was used so as to provide for the situation which exists after a signer has been released in accordance with a subsequent provision of the section, and this leads us to call attention to the fact that, by the last clause of sec. 221.51, a stockholder signing the declaration may relieve himself from liability upon making a *bona fide* sale of the stock as provided in sec. 221.43, but the purchaser of the stock is not responsible in any manner for the debts of the bank unless he shall execute and file a declaration. In addition to that it must be taken into account that it is purely a voluntary arrangement. There are now and were then many small stockholders in state banks with little if any property above their exemptions. By the construction contended for their signature would be all-important, whereas, so far as accomplishing the purpose of the statute is concerned, it would be a matter of indifference whether they signed or not. The statute provides that the declaration when filed shall be in effect a public document. The provi-

sion for a certified copy is no doubt designed to enable the bank to acquaint its depositors and customers with the fact that the performance of the bank's agreements is amply assured. The fact that the attorney general in 1920 ruled as he did accounts for the attitude which the commissioner of banking has subsequently taken, but that single ruling can hardly be claimed to have the dignity of a practical construction. If it was a matter of doubt with the commissioner of banking, it was his duty to submit the matter to the attorney general, upon whose opinion he had a right to rely.

On behalf of appellants it is argued that, the declaration being a voluntary act on the part of the signers, the obligation prescribed by statute should not follow unless the declaration comes within the clear terms of the statute. The argument would apply to the construction of this statute substantially the rule that applies to the construction of penal statutes. If stockholders by their voluntary act seek to make themselves individually liable for the debts of the bank, we see no reason in law why their act should not be given effect in accordance with their intention. To provide a method whereby stockholders may make themselves individually liable and then so strictly to construe the statute would not only defeat the purpose of the legislature and the stockholders but lay a trap for those persons who without suspecting its invalidity may have relied upon it. And it is further argued that where a statute is unambiguous there is no room for construction, and that the reason for the statutory provision in no way concerns the court. If the statute is unambiguous, that is true. Considering the situation with which the legislature was dealing, together with the language of the entire act, we can arrive at no other conclusion than that the purpose of the language used was to require all stockholders desiring to make themselves personally liable, to sign a single declaration. Counsel for appellants, on the other hand, present a persuasive argument that it should receive a different construction. It can hardly be said that

the statute is unambiguous. It would have been clearer had the first sentence read: "Any or all of the stockholders of any bank," etc., or if it was intended to mean what counsel for appellants contend it should be construed to mean, it might have read: "All the stockholders of any bank organized," etc.

II. It is argued on behalf of the appellants that the commissioner is without power to maintain this action although it be held that the declaration made the signers personally liable for the obligations of the bank. The authority of the commissioner is to be found in sec. 220.08 (3):

"Upon taking possession of the property and business of such bank or banking corporation, the commissioner is authorized to collect moneys due to such bank or banking corporation, and do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof, as hereinafter provided. The commissioner shall collect all debts due and claims belonging to it, and upon the order of the circuit court may sell or compound all bad or doubtful debts, and on like order may sell all the real and personal property of such bank or banking corporation on such terms as the court shall direct; and may, if necessary to pay the debts of such corporation, enforce individual liability of the stockholders."

It hardly seems necessary to argue that the power conferred by the language "shall proceed to liquidate the affairs thereof, . . . and may, if necessary to pay the debts of such corporation, enforce individual liability of the stockholders," authorizes the receiver to maintain an action such as this.

Sec. 221.50 provides in terms that the liability of a stockholder signing the declaration is an individual liability. It appears from sec. 221.51 that the liability is joint and several. The statute contains no provision to the effect that the signers shall be liable in proportion to their holdings in the bank. Each is held individually for all the debts, demands, and liabilities of the bank. It is argued that this is not a debt due the bank and therefore one which may not be en-

forced by the commissioner of banking, acting as receiver of the bank. We have no difficulty in arriving at the conclusion that the commissioner of banking, acting as receiver, is authorized, acting on behalf of creditors, to enforce the individual liability of stockholders under a declaration filed pursuant to the provisions of sec. 221.50 as well as the so-called double liability arising under sec. 221.42. An intolerable situation would exist if in a case of insolvency of a bank each individual creditor was required to bring suit separately against the signers of the declaration. While the language of sec. 221.51 indicates that action may be brought against the bank, the only action that could be brought by a creditor against the assets in the hands of the commissioner of banking would be the filing of a claim. It is clearly the intention of these sections to permit stockholders desiring to do so voluntarily to augment the amount available to creditors of the institution in the event of the failure of the bank to meet its obligations. The commissioner of banking, representing as he does all of the creditors, is in a position to enforce this liability.

It is also argued that some of the stockholders signed the declaration conditionally. Having signed the declaration in the manner prescribed by statute and having deposited the same with one of their number for filing with the commissioner of banking, any private understanding or agreement had between the stockholders at the time the declaration was signed cannot affect the liability of the signers under the statute. Having complied with the statute and the declaration having been filed in the office of the commissioner of banking, liability for the obligations of the bank follows as a matter of law. If a defense of that kind were to be permitted, liability on such a declaration might be defeated in every case. In this case the declaration was signed and remained in the office of the commissioner of banking for more than six years. No attempt was made to withdraw it or question its legal force and effect. While,

as pointed out in the briefs of counsel, it was apparently for a time at least overlooked by the commissioner of banking and may have been forgotten by the declarants, it was nevertheless a public document and a valid and subsisting obligation.

A considerable part of the brief on behalf of the appellants is devoted to a discussion of the finding of fact relating to the status of P. R. Minahan as a stockholder. In view of the decision at which we have arrived, it is not necessary for us to discuss or determine this or other questions properly raised in briefs of counsel. These questions arise only if the statute be held to require the signature of all the stockholders.

*By the Court.*—Judgment affirmed.

The following opinion was filed October 13, 1931:

ROSENBERRY, C. J. (*on motion for rehearing*). The principal question considered in this case has been reargued with much vigor. We have again given the matter our very careful consideration and must adhere to the construction of the statute declared in the original opinion.

The statements made in the opinion in regard to the history of ch. 234 of the Laws of 1903, secs. 221.50 and 221.51, Stats. 1903, are erroneous. The writer of the opinion relied upon the history found in the Wisconsin Annotations for 1930. It appears that the law in substantially its present form was first enacted by ch. 223 of the Laws of 1880. It nevertheless remains true that it must have been the intent and purpose of the legislature to provide a method whereby the stockholders could pledge their credit for the benefit of the bank. The error in respect to the history of the statute does not in any respect change the conclusion reached by the court.

*By the Court.*—Motion denied, with $25 costs.